UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

ASHLEY POPA, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

HARRIET CARTER GIFTS, INC., a Pennsylvania corporation, and NAVISTONE, INC., a Delaware corporation,

    Defendants.

Case No. 2:19-cv-00450-PJP

**AMENDED CLASS ACTION COMPLAINT**

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Ashley Popa ("Plaintiff"), individually and on behalf of all others similarly situated, hereby files this action against Defendants Harriet Carter Gifts, Inc. ("Harriet Carter") and Navistone, Inc. ("Navistone" and, collectively with Harriet Carter, "Defendants") in support thereof alleges the following:

## INTRODUCTION

1. This is a class action brought against Defendants for their wiretapping of the computers of visitors to Harriet Carter's website, www.HarrietCarter.com. Defendant Harriet Carter procured a vendor, Defendant Navistone, to intercept and record Harriet Carter's website users' communications with Harriet Carter without the users' consent. Navistone intercepted Harriet Carter website visitors' keystrokes, mouse clicks, and other electronic communications in real time for the purpose of gathering visitors' Personally Identifiable Information ("PII"). By

doing so, Defendants violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et. seq.*, and invaded the privacy of Harriet Carter's website visitors.

2. Plaintiff brings this action individually and on behalf of a class of all persons whose electronic communications were intercepted through the Harriet Carter/Navistone wiretap and seeks all civil remedies provided under the causes of action, including but not limited to compensatory, statutory, and/or punitive damages, and attorneys' fees and costs.

## PARTIES

3. Plaintiff Ashley Popa is a citizen of the Commonwealth of Pennsylvania, and, at all times relevant to this action, resided in Lawrence County, Pennsylvania.

4. Defendant Harriet Carter Gifts, Inc. ("Harriet Carter") is a corporation organized under the laws of Pennsylvania, and its principal place of business is located in Montgomeryville, Pennsylvania. Harriet Carter is a citizen of Pennsylvania.

5. Defendant Navistone, Inc. ("Navistone"), is a corporation organized under the laws of Delaware, and its principal place of business is located in Cincinnati, Ohio. Navistone is a citizen of Ohio.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

7. Venue is proper in this County pursuant to 28 U.S.C. § 1441(a) because Defendants regularly conduct business in this county and the cause of action arose in this district.

## FACTUAL ALLEGATIONS

8. Navistone is a marketing company, which also brokers consumer data. Companies, such a Harriet Carter, engage Navistone to wiretap their website communications with customers in order to "enable a wealth of new marketing data."

9. Pursuant to an agreement with Navistone, Harriet Carter intentionally installed a Navistone computer code onto its website, which serves as a "back door" to retrieve and execute a much larger portion of code that is remotely hosted on Navistone's servers.

10. Once Harriet Carter installed Navistone's computer code, it acted as a secret wiretap that sends visitors' IP addresses and other PII to Navistone in real time. The code then continues to spy on the visitors as they browse the website, instantly reporting every keystroke and mouse click to the Navistone server.

11. The real time interception of data starts as soon as the visitor loads www.HarrietCarter.com into their web browser.

12. Navistone maintains a back-end database containing data and profiles on consumers across the United States, which include consumers' names and mailing addresses. As visitors browse Harriet Carter's website, Navistone intercepts the IP address and PII of those visitors and attempts to match those visitors with records of real-life people maintained in its back-end database.

13. As is explained in a June 20, 2017 article published by Gizmodo, the wiretap codes, like those embedded by Harriet Carter, are concealed from its website's visitors. *See* https://gizmodo.com/before-you-hit-submit-this-company-has-already-logge-1795906081 (last visited June 17, 2019).

14. Navistone intercepts and collects PII in real time: "before you hit 'submit' this company has already logged your personal data." *Id.*

15. The Navistone wiretap that Harriet Carter embedded on its website can only be observed using developer tools, which reveal an incomprehensible looking code, known as Base64 encoding:



16.     Using another tool, that code can be decoded to see the information being collected by Navistone in real time as the visitor navigates the site:



17.     Because of the wiretap, when www.HarrietCarter.com is loaded into a web browser, the website automatically retrieves a computer file located on a remote server.

18.     That file contains encrypted computer code written in JavaScript and is executed with no further action by the website user or any prompting by Harriet Carter or Navistone. The visitors' PII is immediately intercepted and transmitted to Navistone.

19. In the image attached as **Exhibit A**, the user has arrived on the checkout or "cart" page, but has not entered any information – the code tracks that the user has navigated to the cart page.

20. When the user enters any information into the fields, those keystrokes are automatically intercepted by Navistone.

21. In **Exhibit B**, the user has entered a name in the fields, but has not made a purchase. The name, however, is automatically and secretly intercepted and sent to Navistone.

22. Similarly, Navistone automatically and secretly intercepts any information entered into the mailing address field, as seen in **Exhibit C**.

23. When the user enters an email address, it is automatically and secretly intercepted and sent to Navistone's back-end database, as shown in **Exhibit D.**

24. Without the need to "hit submit", Navistone has intercepted the user's information and de-anonymized the user – linking their IP address with their name, mailing address, and email address, which is now all stored in Navistone's back-end database.

25. Navistone boasts that it "specializes in matching up 'anonymous website visitors to postal names and addresses.' In other words, tracing back your digital presence until your physical presence can be found, identified, and marketed to." *See* https://consumerist.com/2017/06/29/these-forms-collect-your-data-even-if-you-dont-hit-submit/ (last visited June 17, 2019).

26. As the Gizmondo article explained:

> NaviStone is an Ohio-based startup in the business of identifying "ready to engage" customers and matching "previously anonymous website visitors to postal names and addresses." It says it can send postcards to the homes of anonymous website shoppers within a day or two of their visit, and that it's capable of matching "60-70% of your anonymous site traffic to Postal names and addresses."

*See*   https://gizmodo.com/before-you-hit-submit-this-company-has-already-logge-1795906081 (last visited June 17, 2019).

27.     Navistone can do this because its wiretaps are deployed over hundreds of websites, through which it correlates its collected PII.  For example, if a user enters their information into the Harriet Carter site and then visits another website running the Navistone code, that user is already de-anonymized for the second site based solely on their IP address.  Likewise, a visitor that entered information or made a purchase on another website running the Navistone code, is de-anonymized immediately upon accessing Harriet Carter's website without entering any information whatsoever and solely by function of the website wiretapping the user's IP address.

28.     The images below show the unique visitor ID number assigned to the user by Navistone, which identifies the user any time the user visits a website running Navistone's code. In the top image, the user is visiting the website of Burpee Seeds (another company which, upon information and belief, uses Navistone's services).  In the bottom image, the user is visiting Harriet Carter's website. The visitor ID is the same for both websites, even though the two companies are unaffiliated:



29. As deployed, Navistone's remote code (deployed by Harriet Carter) functions as a real-time wiretap of users' IP address, keystrokes, and PII and tracks every subdomain, directory path, and query communicated by the user that is navigated to on the site, linking the user with their personally identifying information as well as their potential interest in Harriet Carter's products for the purpose of Harriet Carter target-marketing its products to its website users.

30. Navistone's extensive network of wiretaps captures and uses personal information of visitors to websites across many different industries. Upon information and belief, Harriett Carter was aware of Navistone's business model in capturing information from websites across many different industries.

## PLAINTIFF'S EXPERIENCE

31. Plaintiff has visited numerous retail websites in the past and after visiting Harriett Carter's website, which, upon information and belief, contained Navistone's wiretaps.

32. Plaintiff did not consent to Navistone collecting or using this information collected while visiting the other websites, nor while visiting Harriett Carter's website.

33. Plaintiff visited the Harriet Carter website on numerous occasions, over the several months prior to filing this action, while she was shopping for products offered by Harriet Carter.

34. On one of these occasions, Plaintiff was searching for pet products, including a set of pet stairs. In real-time, Navistone intercepted and recorded Plaintiff's search efforts and captured and recorded each and every subdomain and directory path communicated by Plaintiff.

35. Plaintiff never purchased any products from Harriet Carter, but has entered her personal information into Harriet Carter's forms, including her name, address, and email address.

36. Through Harriet Carter's procurement of Navistone to wiretap its website communications, Plaintiff's IP address and PII were automatically and secretly intercepted while

visiting Harriet Carter's website. Indeed, every keystroke, mouse click, and other electronic communications of Plaintiff were intercepted in real-time by Navistone.

37. Plaintiff did not consent to the interception of Plaintiff's electronic communications with Harriet Carter, nor their disclosure to Navistone.

38. On information and belief, when Plaintiff visited Harriet Carter's website, Navistone collected her PII from Harriett Carter, and had already collected some or all of her personal information from other websites in its wiretap network.

39. Thus, Navistone was able to link Plaintiff's previous browsing activity on other websites and her intercepted activity on Harriet Carter's website, to her PII, revealing an enormous amount of private information about Plaintiff.

## CLASS ACTION ALLEGATIONS

40. Plaintiff, pursuant to Rules 1702, 1708 and 1709 of the Pennsylvania Rules of Civil Procedure, asserts this action individually and on behalf of a class of all Pennsylvania residents who accessed Harriet Carter's website and had their communications intercepted by Navistone.

41. Excluded from the class are Defendants, their parents, subsidiaries, affiliates, officers, and directors, the judge to whom this case is assigned and any immediate family members thereof, and the attorneys who enter their appearance in this action.

42. **Numerosity – Pennsylvania Rule of Civil Procedure 1702(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. The precise number of class members and their identities may be obtained from Defendants' books and records.

43. **Commonality – Pennsylvania Rule of Civil Procedure 1702(2).** This action involves questions of law and fact that are common to the class members. Such common questions

include, but are not limited to: (a) whether Harriet Carter procured Navistone to intercept Harriet Carter's website visitors' electronic communications with Harriet Carter; (b) whether Defendants intentionally intercepted communications of Plaintiff and putative class members; (c) whether Plaintiff and putative class members had a reasonable expectation of privacy in their electronic communications; and (d) whether Defendants invaded Plaintiff and putative class members' privacy by intercepting (or procuring the interception of) their electronic communications and de-anonymizing them for Harriet Carter and other users of Navistone's code. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

44. **Typicality – Pennsylvania Rule of Civil Procedure 1702(3).** Plaintiff's claims are typical of the other class members' claims because, among other things, all class members were comparably injured through the uniform prohibited conduct described above. For instance, Plaintiff and each member of the class had their communications intercepted in violation of the law and their right to privacy. This uniform injury and the legal theories that underpin recovery make the claims of Plaintiff and the members of the class typical of one another.

45. **Adequacy of Representation – Pennsylvania Rule of Civil Procedure 1702(4) and 1709.** Plaintiff is an adequate representative of the Class because: (a) Plaintiff's interests do not conflict with the interests of the other class members that Plaintiff seeks to represent; (b) Plaintiff has retained counsel competent and experienced in complex consumer class action litigation; (c) Plaintiff intends to prosecute this action vigorously; and (d) Plaintiff's counsel have adequate financial means to vigorously pursue this action and ensure the interests of the class will

not be harmed. Furthermore, the interests of the class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

46. **Predominance – Pennsylvania Rule of Civil Procedure 1708(a)(1).** Common questions of law and fact predominate over any questions affecting only individual class members. For example, Defendants' liability and the fact of damages is common to Plaintiff and each member of the class. If Defendants intercepted Harriet Carter's website visitors' communications, then Plaintiff and each class member suffered damages by that conduct.

47. **Manageability – Pennsylvania Rule of Civil Procedure 1708(a)(2).** While the precise size of the class is unknown without the disclosure of Defendants' records, the claims of Plaintiff and the class members are substantially identical as explained above. Certifying the case as a class action will centralize these substantially identical claims in a single proceeding and adjudicating these substantially identical claims at one time is the most manageable litigation method available to Plaintiff and the class.

48. **Risk of Inconsistent, Varying, or Prejudicial Adjudications – Pennsylvania Rule of Civil Procedure 1708(a)(3).** If the claims of Plaintiff and the members of the class were tried separately, Defendants may be confronted with incompatible standards of conduct and divergent court decisions. Furthermore, if the claims of Plaintiff and the members of the class were tried individually, adjudications with respect to individual class members and the propriety of their claims could be dispositive of the interests of other members of the class not party to those individual adjudications and substantially, if not fully, impair or impede their ability to protect their interests.

49. **Litigation Already Commenced – Pennsylvania Rule of Civil Procedure 1708(a)(4).** To Plaintiff's knowledge, there are no other cases that have been brought against

Defendants, or that are currently pending against Defendants, where a Pennsylvania consumer seeks to represent a class of Pennsylvania residents based on the conduct alleged in this Complaint.

50. **The Appropriateness of the Forum – Pennsylvania Rule of Civil Procedure 1708(a)(5).** This is the most appropriate forum to concentrate the litigation because Defendant Harriet Carter is headquartered in this Commonwealth, Plaintiff resides in this District, and a substantial number of class members were injured in this District.

51. **The Class Members' Claims Support Certification – Pennsylvania Rule of Civil Procedure 1708(a)(6) and (7).** Given the relatively low amount recoverable by each class member, the expenses of individual litigation are insufficient to support or justify individual suits. Furthermore, the damages that may be recovered by the class will not be so small such that class certification is unjustified.

52. **The General Applicability of Defendant's Conduct – Pennsylvania Rule of Civil Procedure 1708(b)(2).** Defendants' uniform conduct is generally applicable to the class as a whole, making relief appropriate with respect to each class member.

## COUNT I
### Violation of Pennsylvania Wiretap Act
### 18 Pa. Cons. Stat. § 5701, et. seq.

53. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

54. Plaintiff brings this claim individually and on behalf of the class.

55. The Pennsylvania Wiretap Act (the "Act") prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral

communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. 18 Pa. Cons. Stat. § 5703.

56. Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject to a civil action for (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. 18 Pa. Cons. Stat. § 5725(a).

57. Harriet Carter procured Navistone to automatically and secretly spy on, and intercept, Harriet Carter's website visitor's electronic communications with Harriet Carter in real-time.

58. To facilitate this wiretap, Harriet Carter installed Navistone's code on its website.

59. Upon information and belief, Harriet Carter knew that Navistone would add its visitor's information, procured through the wiretap, to its back-end database and disclose that information to other users of Navistone code as part of its effort to de-anonymize visitors.

60. Upon information and belief, Harriet Carter intentionally used information of its visitors, obtained through Navistone's wiretap on other websites, to de-anonymize users of Harriet Carter's site.

61. Navistone intentionally intercepted Harriet Carter's website visitors' electronic communications with Harriet Carter in real-time.

62. Plaintiff and the putative class members engaged in communications with Harriet Carter through use of Harriet Carter's website.

63. Plaintiff and the putative class members had a justified expectation under the circumstances that their electronic communications would not be intercepted.

64. Harriet Carter employed Navistone to intercept Plaintiff and the putative class members' electronic communications with Harriet Carter.

65. Because the code is secret and encrypted, Plaintiff and the putative class members were not aware that their electronic communications were being intercepted by Navistone.

66. Plaintiff and the putative class members did not consent to having their communications intercepted by Navistone.

## COUNT II
### Invasion of Privacy – Intrusion Upon Seclusion

67. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

68. Pennsylvania common law recognizes the tort of invasion of privacy. The right to privacy is also embodied in multiple sections of the Pennsylvania constitution.

69. Plaintiff brings this claim individually and on behalf of the class.

70. Harriet Carter's website users reasonably believed that they could interact with Harriet Carter through its website without their communications being intercepted, recorded, disclosed, and used by Defendants.

71. Plaintiff and class members had an interest in precluding the dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

72. Defendants intentionally intruded on Plaintiff's and class members' private life, seclusion, or solitude, without consent.

73. Defendants' conduct is highly objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the privacy right.

74. Plaintiff and class members were harmed by Defendants' wrongful conduct.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the proposed Class, respectfully request that the Court enter judgment in Plaintiff's favor and against Defendants for an amount in excess of the arbitration limits, as follows:

A. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel;

B. Ordering Defendants to pay actual and consequential, statutory, and/or punitive damages to Plaintiff and the Class members;

C. Ordering declaratory and injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful conduct as set forth herein;

D. Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

E. Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

F. Ordering such other and further relief as may be just and proper.

**JURY DEMANDED ON ALL ISSUES SO TRIABLE**

Dated: June 24, 2019   Respectfully submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch
Kelly K. Iverson
Jamisen A. Etzel
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
glynch@carlsonlynch.com
kiverson@carlsonlynch.com
jetzel@carlonlynch.com

*Attorneys for Plaintiff*