IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHLEY POPA, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>HARRIET CARTER GIFTS, INC, *a Pennsylvania Corporation*, and NAVISTONE INC., *a Delaware Corporation*,<br><br>*Defendants*. | Civil Action No. 2:19-cv-450<br><br>Hon. William S. Stickman IV |

### **OMNIBUS ORDER OF COURT**

Plaintiff Ashley Popa ("Popa") contends that Defendants NaviStone Inc. ("NaviStone") and Harriet Carter Gifts, Inc. ("Harriet Carter") violated Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA") 18 Pa. C.S. § 5701, *et seq*. The Court granted summary judgment in favor of NaviStone and Harriet Carter holding that NaviStone could not have "intercepted" Popa's communications because it was a "party" to the electronic conversation. Alternatively, it ruled that if any interception did occur, it happened outside Pennsylvania's borders; thus, WESCA did not apply. (ECF Nos. 116-18). The United States Court of Appeals for the Third Circuit read Pennsylvania law differently on both holdings, and it vacated the Court's ruling. (ECF No. 122). The Court has afforded the parties additional discovery limited to issues raised by the Third Circuit: location, privacy policy, and consent. (ECF Nos. 125 and 126).

Before the Court are two separate motions to compel discovery. (ECF Nos. 136 and 139). Popa filed a Motion to Compel Written Discovery Responses and Production from NaviStone, Inc., and for Leave to Take Fed. R. Civ. P. 30(B)(6) Deposition of Defendant NaviStone, Inc.

1

(ECF No. 136). Popa wants NaviStone to fully and completely answer Plaintiff's Interrogatory Nos. 21-23, and to fully and completely respond to and produce corresponding documents and things responsive to Plaintiff's Request for Production of Documents and Things Nos. 4-6. (*Id.* at 1). She also wants to take Fed. R. Civ. P. 30(b)(6) depositions of NaviStone. (*Id.*). Harriet Carter filed a Motion to Compel Written Discovery Responses and Production from Plaintiff Ashley Popa. (ECF No. 139). It "seeks an order compelling Plaintiff Ashley Popa to provide a complete response to Interrogatory No. 1 in Defendant Harriet Carter Gifts, Inc.'s Second Set of Discovery Requests Directed to Plaintiff Ashley Popa." (*Id.* at 1). Oral argument was requested by the parties, and it occurred on April 12, 2023.

## I.   STANDARD OF REVIEW

Courts have "broad discretion to fashion discovery orders" and often give liberal treatment to discovery rules. *Dockery v. Heretick*, 2021 WL 268497, at *2 (E.D. Pa. Jan. 27, 2021) (citations omitted). Federal Rule of Civil Procedure 26 governs the discovery process, which allows the parties to obtain "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance in this context has been 'construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case.'" *United States ex rel. Bergman v. Abbott Lab'ys*, 2016 WL 4247429, at *2 (E.D. Pa. Aug. 11, 2016) (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)). The scope of discovery is broad, but it is not unlimited. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). "[W]here a party receives evasive or incomplete answers to a discovery request, they are permitted to bring a motion to compel disclosure" under Rule 37. *In re Auto. Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at *2 (E.D. Pa. May 26, 2006). The moving party must demonstrate the relevance

of the requested information. *Bergman*, 2016 WL 4247429, at *2. The burden then shifts to the resisting party, *id.*, who "'must show specifically' how the information requested 'is not relevant or how each question is overly broad, burdensome or oppressive,'" *Auto. Refinishing*, 2006 WL 1479819, at *2 (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)).

II. ANALYSIS

A. Popa's Motion to Compel Discovery

Popa argues that the Court should grant her motion because the discovery she seeks from NaviStone is relevant to the issue of mutual prior consent under WESCA, and because NaviStone has not established a disproportionate burden. (ECF No. 137, pp. 7-13). NaviStone argues that Popa's motion asks it "to provide supplemental interrogatory answers with information NaviStone does not know [and] to produce documents that do not exist [...]." (ECF No. 138, p. 1). It further argues that the discovery Popa seeks, which is information about visits to Harriet Carter's privacy policy by persons other than herself from 2017 to the present, is not relevant to the limited issues on remand and unduly burdensome. (*Id.*).

1. *Interrogatories and Requests for Production of Documents at Issue*

   a. Interrogatory No. 21 - "[i]dentify the total number of unique IP Addresses associated with Harriet Carter's website that were sent to NaviStone's servers between March 8, 2017, and the present, and explain in detail how the number was determined." (ECF No. 137-2, p. 6).

   b. Interrogatory No. 22 - "[i]dentify the number of [those unique IP Addresses identified in response to Interrogatory No. 21] that show evidence in the URL, Title, Get canonical, or any other data point collected by NaviStone, that the user navigated to the Harriet Carter privacy policy, as well as the number of

3

times each IP Address navigated to the Harriet Carter privacy policy, and explain in detail how the number was determined." (*Id.*).

c. <u>Interrogatory No. 23</u> - "[f]or each visit to the privacy policy identified in response to Interrogatory No. 22, [i]dentify the length of time between when the privacy policy page was On Doc Ready with a particular Page Load ID until a new Page Load ID was On Doc Ready." (*Id.*).

d. <u>Request Number 4</u> - "[d]ocuments sufficient to show the total number of unique IP Addresses associated with the OneTag code running on Harriet Carter's website between March 8, 2017, and the present." (*Id.* at 9).

e. <u>Request Number 5</u> - "[d]ocuments sufficient to show, for each unique IP Address identified in response to Interrogatory No. 21, the number of those IP Addresses that show evidence in the URL, Title, Get canonical, or any other data point collected by NaviStone, that the user navigated to the Harriet Carter privacy policy, as well as the number of times each IP Address navigated to the Harriet Carter privacy policy." (*Id.*).

f. <u>Request Number 6</u> - "[d]ocuments sufficient to show, for each visit to the privacy policy identified in response to Interrogatory No. 22, the length of time between when the privacy policy page was On Doc Ready with a particular Page Load ID until a new Page Load ID is On Doc Ready." (*Id.* at 10).

2. ***The parties' arguments***

NaviStone argues that Popa's "written discovery requests seek information that is not important to resolving the case, may not exist, and would be burdensome both to identify and produce in a reliable form." (ECF No. 138, p. 6). Specifically, it asserts that the number of visitors

4

to Harriet Carter's website who read the privacy policy is irrelevant to the issue of consent under WESCA because "WESCA does not require actual knowledge, but may be implied under an objective standard met where a reasonable person should know of the claimed interception." (*Id.* at 7) (citing *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022)). Thus, according to NaviStone, "the dispositive question is not how many people read the privacy policy, but whether the policy existed and, if so, whether it adequately disclosed the practices at issue in this lawsuit." (*Id.* at 7-8) (citing *Popa,* 52 F.4th at 132). NaviStone argues that "the necessary facts to resolve the question of implied consent are available to all and undisputable" because "Harriet Carter has produced evidence showing both the existence and content of its website, and the privacy policy specifically, at the time of Plaintiff's alleged visits." (*Id.* at 8). Additionally, NaviStone asserts that the privacy policies produced by Harriet Carter—one of which allegedly pre-dates Popa's visit to the website and one of which allegedly post-dates Popa's visit to the website—"are materially identical" and include a notice stating the following:

> We may from time to time contract with third party vendors to serve ads to our customers on our behalf across the Internet or to send our catalogs to customers whom we think may be interested in our products or services. To do this, the vendors will collect anonymous information about your visits to our Web site and your interaction with our products and services. This anonymous information is collected through the use of a cookie or pixel tag – industry standard technology used by most major Web sites. No personally identifiable information is collected in this process. They may also pool the anonymous information that they collect with other sources of information not collected during your visit to our website, which may include your name and mailing address.

(*Id.* at 8-9) (citing ECF No. 138-5, p. 2; ECF No. 138-6, p. 3). Accordingly, NaviStone argues that the issue of implied consent can be resolved without additional discovery.

NaviStone additionally asserts that the discovery Popa requests is unnecessary to rebut Defendants' affirmative defense of consent. Because NaviStone based its consent defense on "the presence and content of the policy" rather than "some global website usage analysis," it argues

that "the number of visitors to the privacy policy" is not relevant "for purposes of establishing implied consent." (ECF No. 138, p. 9). NaviStone further argues that if it moves for summary judgment, its inability to "demonstrate the percentage, large or small, of visitors to Harriet Carter's website that visited the privacy policy" will justify an inference by the Court in Popa's favor. (*Id.*).

Popa argues that the question of "[w]hether 1% or 99% of the website visitors navigate to the privacy statement is relevant to whether an objective, reasonable person impliedly consented under WESCA." (ECF No. 137, p. 9). Popa asserts that "[i]f a minimal number of visitors to the website actually navigated to the privacy statement – a fact that the data in NaviStone's possession, custody, and control can show – that evidence may rebuke Defendants' allegation that, objectively, a reasonable person knew or should have been warned of the wiretapping." (*Id.*). Thus, according to Popa, "[b]ecause Plaintiff's Requests are directly relevant to the issue of mutual prior consent under WESCA, NaviStone's objections to the Requests should be overruled and it should be compelled to provide full and complete responses and productions." (*Id.* at 10).

As to the burden that additional discovery would impose, NaviStone argues that its database "does not contain IP addresses or information about visits to privacy policies because that information is not relevant to the services NaviStone provides." (ECF No. 138, p. 10). Thus, NaviStone alleges that in order to obtain the information requested by Popa, it would first have to "assess whether such a project would even be feasible" by "redirecting one or more of its five database engineers." (*Id.* at 11). If found feasible, "NaviStone would then need to write software code … through an iterative process, setting up new databases to store any extracted text and attempting to execute code – with no guarantee of success." (*Id.*). Further, if the text "did not exist in an identifiable or extractable form, the search could have incomplete results or no results at all." (*Id.*). NaviStone also argues that the data would have "questionable value because (1) IP

addresses are not constant, … (2) IP addresses can be 'spoofed' or changed using virtual private networks (VPNs); and (3) ever-present bots can be indistinguishable from actual human beings visiting a website." (*Id.* at 11-12) (footnotes omitted). Additionally, the data would not make clear the reasons for which some Harriet Carter visitors "may have declined to view that site's privacy policy during any given visit (*e.g.,* because they read it previously, were already familiar with the company's information collection and usage practices from other sources, had no interest in it, *etc.*)." (*Id.* at 12). Accordingly, NaviStone argues that "[w]riting new code solely for the purpose of responding to discovery is highly burdensome and distracts from the company's core mission" especially in light of its relatively small size of approximately forty-five total employees and five database engineers. (*Id.* at 11).

Popa argues that NaviStone has not established a disproportionate burden because "NaviStone confirmed that it has the exact information that Plaintiff seeks" in its Supplemental Responses to Plaintiff's First Set of Interrogatories. (ECF No. 137, p. 10). Specifically, Popa points to NaviStone's response to Interrogatory No. 15(a). NaviStone's response to Interrogatory 15(a) reads in pertinent part:

> For the period after on or about June 20, 2017, NaviStone's code resulted in the following types of information clickstream information to be sent by the website visitor's browser directly to NaviStone's servers in Virginia concerning that visitor's interactions with the Harriet Carter website:
>
> - the URLs of pages visited on the Harriet Carter Website
> - information appearing on the pages of the website
> - the number of clicks on a page of the Harriet Carter website
> - the dollar amount of any order placed
> - the order ID number
> - the IP address
> - A "1" to indicate interaction with a form field on the Harriet Carter website
> - A "1" to indicate if the information in an email form field has attributes of an email address.


(ECF No. 137-7, p. 19). To rebut NaviStone's contention that it "does not maintain a retrievable record" of the information Popa seeks, Popa points to the raw data which NaviStone acknowledges it possesses within its servers. (ECF No. 137, p. 11) (quoting ECF No. 137-4, p. 2). Popa argues that "NaviStone is wholly capable of developing search tools to pull and cull the data on its servers … and should be compelled to do so" because "NaviStone's entire business is based on programming code that it has created to: (a) intercept web user's communications; and (b) … analyze the raw data obtained from those interceptions to predict the behavior of those web users and market to them." (ECF No. 137, pp. 11-12).

Additionally, Popa argues that the discovery sought is proportional to the needs of the case because it goes directly to the question of "whether Defendants can satisfy the mutual consent exception to WESCA." (*Id.* at 12). Thus, according to Popa, "fairness requires [that she] be given access to the same information in Defendants' possession relevant to this defense." (*Id.*). Popa also contends that the amount in controversy "supports production" because "the action remains a class action and Plaintiff continues to represent the putative class." (*Id.*). Further, Popa alleges that "NaviStone has not set forth any evidence of the expense of the proposed discovery" and asserts that "the expense is unlikely to outweigh its likely benefit." (*Id.*).

3. *Analysis*

As explained above, the parties' disagreements center around two separate but interrelated issues; whether the material requested by Popa is facially discoverable and, if so, whether there is a disproportionate burden on NaviStone in responding that outweighs Popa's interest in obtaining the information. The Court will first address the threshold issue of discoverability. It will then examine the twin considerations of burden and proportionality.

In *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020), the Supreme Court of Pennsylvania held that whether a person manifested prior consent under WESCA is an objective standard. It explained: "[O]ur case law illustrates that 'prior consent' can be demonstrated when the person being recorded 'knew or should have known, that the conversation was being recorded.' ***This standard is one of a reasonable person, and not proof of the subjective knowledge of the person being recorded*** [. . .]." *Id.* (internal citation omitted) (emphasis added). NaviStone argues that this objective standard makes it irrelevant whether Popa, or anyone else, actually accessed the privacy policy. Popa contends that information about the number and extent of clicks on the privacy policy is relevant to the issue of prior consent—even under the objective standard—because it could be evidence of the visibility and accessibility of the privacy policy. In other words, Popa argues, evidence that very few people clicked on the policy could demonstrate that the policy was not easily visible and/or accessible and, therefore, is informative to whether a reasonable person knew or should have known about the policy and consented to being intercepted.

At this stage, the Court agrees with Popa that the requested information is discoverable. This determination is not an indication that the Court agrees with the conclusions that Popa believes that the evidence will or may show, only that under the liberal standard for relevance in discovery, Popa is entitled to the information and materials sought. While the standard of whether Popa and the other members of the putative class consented is objective, the question of whether a reasonable person could have reasonably accessed the privacy policy may be informed by the context of that policy on the website. Whether many or few visitors accessed the privacy policy may be relevant to the question of the visibility and accessibility of the privacy policy. No doubt, it is possible (as NaviStone argued) that the absence of clicks on the policy may indicate a conscious choice by visitors to ignore an open and obvious policy. But it could also, as Popa

9

argues, provide evidence that visitors could not reasonably see or access the policy. Ultimately, the resolution of those substantive questions is for another day. Now, the Court only has to determine whether the requested information is discoverable. It is.

The next step is to determine whether the burden of responding to Popa's discovery requests is disproportionate and unreasonable. As an initial matter, NaviStone was less than clear as to whether the requested information exists, or whether it is possible to state with certainty whether it does not exist. It contends that making that threshold determination and (to the extent the information does exist) responding to Popa's discovery requests would require substantial time and expense associated with, *inter alia*, writing a new computer code to search for the requested information and undertaking the search and production.

The record before the Court does not allow it to adequately balance whether responding to Popa's discovery requests in unreasonably burdensome and disproportionate. NaviStone offered the Declaration of Larry Kavanagh, the Chief Executive Officer and President of NaviStone, purporting to demonstrate both the uncertainty and associated burden in determining, first, whether the requested information exists and, then, analyzing the information and responding to the requests. (ECF No. 138-1); (04/12/23 Transcript, pp. 14-15, 17-19). But Popa should be able to probe any averment of disproportionate burden. A more fulsome record will aid the Court's determination of issues relating to burden and proportionality.

IT IS HEREBY ORDERED that NaviStone designate a witness to sit for a deposition with respect to the burden associated with responding to Popa's discovery requests within thirty (30) days. The deposition will be limited to three hours (per side). Because the Court has held that the requested material is discoverable, it is NaviStone's burden to demonstrate that complying with Popa's discovery requests is unduly burdensome. NaviStone will be afforded fourteen days after

the production of the deposition transcript to file a motion for protective order—to the extent that the testimony (taken as a whole) supports such a position. Popa may file a response within fourteen days of the motion.

### B. Popa's Request for a Corporate Deposition

Popa requests leave to depose NaviStone pursuant to Fed. R. Civ. P. 30(b)(6) ("Rule 30(b)(6)"). She wants to depose "a corporate witness prepared on the noticed topics…limited to four hours." (ECF No. 137, p. 14). According to Popa, such a deposition is necessary in light of newly produced documents pertaining to NaviStone's privacy statement as well as the guidance from the Third Circuit. (*Id.*). At oral argument, counsel for Popa represented that the purpose of the noticed deposition was "to take a substantive 30(b)(6) with having the documents and information in response to our written discovery in order to inquire into the issues that Your Honor has permitted us to after remand." (04/12/23 Transcript, p. 8). In light of the ruling above, the motion to compel a Rule 30(b)(6) deposition is provisionally granted, but held in abeyance until the determination of any motion for protective order filed by NaviStone. To the extent that the Court, ultimately, holds that NaviStone's burden does not outweigh Popa's interest in obtaining the requested information and materials, Popa may take the requested deposition.

### C. Harriet Carter's Motion to Compel Discovery

Harriet Carter served Popa with its Second Set of Requests for Admissions, First Set of Interrogatories, and First Set of Document Requests Directed to Plaintiff on December 23, 2022. (ECF No. 140, p. 1); (*see* ECF No. 140-1). Popa responded to the requests. (*See* ECF No. 140-2). Harriet Carter deemed Popa's responses incomplete and sent a deficiency letter on January 25, 2023. (*See* ECF No. 140-3). Popa then provided supplemental responses which Harriet Carter found "incomplete and insufficient." (ECF No. 140, p. 2); (*see* ECF No. 140-4). Harriet Carter

11

argues that the Court should grant its Motion to Compel because the discovery sought is "directly relevant to the limited discovery order by this Court." (ECF No. 140, p. 4). Specifically, Harriet Carter seeks a more complete response to Interrogatory No. 1 in its Second Set of Discovery Requests Directed to Plaintiff Ashley Popa.

In Interrogatory No. 1, Harriet Carter asks Popa to "explain all of the reasons why [Popa] did not admit the Request for Admission without qualification … [f]or each Request for Admission … in which [Popa] did not respond with an unqualified admission." (ECF No. 140-1, p. 10). Harriet Carter alleges that "Plaintiff denied Requests for Admissions Nos. 4 and 6 but failed to explain the reasons for denying the Requests for Admission in response to Interrogatory No. 1." (ECF No. 140, p. 3).[1] Additionally, Harriet Carter "moves to compel a complete and full response to Interrogatory No. 1 as it relates to Request for Admission No. 5 or, alternatively, requests that Plaintiff be deemed to have waived any right to provide other reasons to explain her unqualified admission to Request for Admission No. 5." (ECF No. 140, p. 4 n.2).

Request No. 4 asks Popa to admit that she has no evidence that the privacy policy on Harriet Carter's website "at any time [Popa] visited the Harriet Carter website prior to this lawsuit" was any different from the privacy policy "discussed and included in the record at ECF 27." (ECF No. 140-2, p. 7). Popa objects, stating that the Request is "vague and confusing and seeking an admission before all discovery in this action has been completed." (*Id.*). Popa additionally asserts that because the record at ECF No. 27 has a copyright date of 2019, that particular privacy policy could not have been published in 2018 when Popa visited the Harriet Carter website. (*Id.*).

---

[1] In her initial response to Interrogatory No. 1, Popa states "Subject to and without waiver of the General Objections and the Specific Objections asserted in response to each Request for Admission, Plaintiff states see Responses to Requests for Admission." (ECF No. 140-2, p. 10).

Request No. 5 asks Popa to "[a]dmit that [Popa has] no evidence that the privacy policy on the Harriet Carter website prior to this lawsuit was not available through a link of every page of that website, including in a website footer." (*Id.*). Popa objects, stating that the Request is "vague and confusing and seeking an admission before all discovery in this action has been completed." (*Id.*). Popa additionally asserts that she "cannot admit or deny this request as she has no firsthand knowledge of every page of the Harriet Carter website." (*Id.*).

Request No. 6 asks Popa to "[a]dmit that [Popa has] no evidence to suggest that the page layout of the Harriet Carter website, including at any time [Popa] visited the Harriet Carter website prior to this lawsuit, is different than the page layout discussed and included in the record at ECF 27." (*Id.*). Popa objects, stating that the Request is "vague and confusing and seeking an admission before all discovery in this action has been completed." (*Id.* at 8). Popa additionally asserts that because the record at ECF No. 27 has a copyright date of 2019, that particular page layout could not have been published in 2018 when Popa visited the Harriet Carter Website. (*Id.*).

Popa supplemented her response to Interrogatory No. 1 as follows:

> With respect to RFA No. 4, Plaintiff objects to the Interrogatory seeking "all of the reasons" why the RFA was not admitted where, by its nature, one reason for denial is sufficient to deny the RFA. Once Plaintiff has one reason that the RFA is not admitted, there is no requirement to consider other reasons to deny the RFA. Subject to her objections, Plaintiff denied the RFA because the record at ECF 27 has a copyright date of 2019. Because Plaintiff's visit was in 2018, the copyright date is evidence that the privacy policy at ECF 27 was not published in 2018.
>
> With respect to RFA No. 6, Plaintiff objects to the Interrogatory seeking "all of the reasons" why the RFA was not admitted where, by its nature, one reason for denial is sufficient to deny the RFA. Once Plaintiff has one reason that the RFA is not admitted, there is no requirement to consider other reasons to deny the RFA. Subject to her objections, Plaintiff denied the RFA because the record at ECF 27 has a copyright date of 2019. Because Plaintiff's visit was in 2018, this is evidence that the page layout at ECF 27 was not published in 2018.

(ECF No. 140-4, p. 11).

Popa contends that she has properly responded to and answered Interrogatory No. 1. Specifically, she echoes her supplemental response to Interrogatory No. 1, arguing that "by their nature, a request for admission requires a yes or no response and, therefore, one reason to deny the question is all that is necessary to make the answer a no." (ECF No. 141, p. 2). Popa further alleges that Harriet Carter's "view of Plaintiff's discovery obligations ... would negate the provision of Fed. R. Civ. P. 33 establishing a 25 written interrogatory limit... [and] would thwart the purpose of Rules 33 and 36." (*Id.* at 2-3). Popa additionally asserts that Harriet Carter's "suggestion that Plaintiff failed to properly respond to its Interrogatory or that she waived any rights is without merit" because she complied with the requirement of Rule 36 which "specifically provides 'when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.'" (*Id.* at 4) (quoting Fed. R. Civ. P. 36). Thus, Popa contends that, "because any qualifications were properly explained in response to the Request for Admission consistent with Rule 36, ... [Harriet Carter] should not be permitted to go beyond that requirement through use of Rule 33." (*Id.*).

The Court holds that Popa has responded to Interrogatory No. 1. She asserted objections as she is free to do. Nevertheless, subject to her objections, Popa responded to the question asked. (*See* Supplemental Response, ECF No. 140-4, p. 11). Popa has not represented that she is holding anything back. She was obligated only to respond fully and truthfully to the interrogatory. She is not required to respond in a manner dictated by Harriet Carter. Because the Court's review of the Supplemental Response leads it to believe that Popa has adequately responded to Interrogatory No. 1 and because Harriet Carter has offered nothing suggesting otherwise, Harriet Carter's motion is denied.

AND NOW, this **26** day of April 2023, IT IS HEREBY ORDERED that Plaintiff Ashley Popa's Motion to Compel Discovery Responses (ECF No. 136) is GRANTED IN PART AND DENIED IN PART as set forth herein.

IT IS FURTHER ORDERED that Defendant Harriet Carter Gifts, Inc.'s Motion to Compel Discovery Responses (ECF No. 139) is DENIED.

BY THE COURT:

_/s/ William S. Stickman IV_
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE